## STATE EX REL. HARRIS ET AL. *v.* SUPERIOR COURT OF MARION COUNTY ET AL.

[No. 30,478. Filed April 17, 1964. Rehearing denied June 2, 1964.]

*Edwin K. Steers,* Attorney General, *Robert W. Mc-Nevin,* Assistant Attorney General, and *John E. Hirschman,* Deputy Attorney General, for relators.

*Joseph F. Quill* and *John G. McNutt,* of Indianapolis, for respondents.

JACKSON, J.—The case at bar is here on a Verified Petition for Writ of Prohibition seeking, in the alternative, a writ prohibiting the respondents from further assuming or exercising any jurisdiction in cause #S63-5354 pending therein and further a mandate to dismiss said asserted cause of action and a further order to show cause why respondents should not be permanently prohibited from further assuming or exercising any jurisdiction in said cause; or that respondents be mandated and ordered by this court to dissolve said restraining order; and that upon due return or in default of return to said writ, that the same be made permanent.

In order to arrive at a clear understanding of the issues here involved we deem it necessary to review the factual background of the issues presented the respondent court. The record before us discloses the following facts:

On July 31, 1963, one Frank King filed his complaint against relators in two paragraphs in the respondent court seeking in paragraph I thereof a declaratory judgment against the sale of iced or cooled malt beverages pursuant to Acts 1941, ch. 237, §4, p. 952, being §12-510, Burns' 1956 Replacement;[1] and in paragraph

---

1. "Beer Dealers' Permits—Class 'A'—Alcoholic malt beverage permits.—Beer dealer's permits for the sale of alcoholic malt beverages may be issued as hereinafter provided. Any person desiring to sell alcoholic malt beverages on the premises described in the dealer's permit, which such alcoholic malt beverages, however, shall not be used or consumed or suffered or permitted to be used or consumed upon the premises where the same are sold under such dealer's permit, shall make verified, written application to the commission for a dealer's permit, on a form duly prescribed and furnished, and the commission may, at its discretion, issue such dealer's permit, subject to the restrictions of this act, after the proceedings herein prescribed therefor shall have been concluded. In addition to all provisions of law relating to the holder of a beer dealer's permit,

it shall be unlawful for such permit holder to offer or display for sale, or sell, barter, exchange or give away any bottle, can, container, or package of alcoholic malt beverages which was iced or cooled by such permit holder before or at the time of such sale, exchange or gift.

"All the proceedings and requirements above prescribed, in case of an application for a beer retailer's permit, including the payment of the sum of two hundred dollars [$200] in cash, if such beer dealer's application applies to premises situated within a city of the first or second class, or one hundred fifty dollars [$150] if such application applies to premises situated within an incorporated or unincorporated town or city having a population of less than thirty-five thousand [35,000] according to the last preceding decennial census of the United States of America, and the filing of the bond in the same penal sum, and containing the same conditions, to be approved by the commission, and the same advertisement in the same manner, and for the same number of times and length of time, notifying the public, shall be given, as in case of an application for a retailer's permit. Proceedings before the local board, and the duties thereof, and the proceedings of the commission with respect thereto, shall be the same as are above prescribed in case of applications for retailer's permits for the sale of alcoholic malt beverages; and, said commission may grant or refuse said application accordingly as it deems the public interest will be best served by granting or refusing the same. The action of the commission thereon shall be final, and no applicant shall have the right to compel the granting of such a permit.

"Said dealer's bond shall be subject to action in the same manner, for the same cause, and for the same limited amount, as is provided above for recovery in actions on a retailer's bond.

"In case of refusal to grant application, the same provisions, as made above in case of an application for retailer's permit, for the return of the amount of license fee paid by the applicant, less the sum of twenty-five dollars [$25.00] shall apply.

"A dealer's permit for alcoholic malt beverages shall continue in force for one [1] calendar year only, including the day upon which the same is granted. After the expiration of said year, said permit shall be fully expired.

"The holder of a dealer's permit, while the same continues in force, and subject to revocation by the commission for the violation of any provision of this act, or for the violation of any rule or regulation of the commission, shall be entitled to purchase alcoholic malt beverages required for sale under such dealer's permit only for permittees under this law entitled to sell to him, and such dealer shall be entitled to possess and sell such alcoholic malt beverages, in bottles only or in such containers only as specified by the commission, and no sale thereof shall be made by the drink, or for consumption upon the premises described in the application for such permit; likewise, no delivery of said alcoholic malt beverages by such dealer, or on his behalf, shall be made on the street or at the curb, but such dealer may make delivery of alcoholic malt beverages on such licensed premises or to the home of any customer in bottles or in such containers as are permissible under the rules and regulations of the commission in a quantity not to exceed forty-eight [48] pints at any one time.

II of said complaint an Injunction and Restraining Order, first without notice temporarily restraining and enjoining relators from putting into effect bulletin and order #149[2] until final hearing and determination, and upon final hearing defendants (relators here) be perpetually enjoined from allowing package liquor store dealers from selling, etc., giving away or otherwise disposing of any iced or cooled alcoholic malt beverages (beer).

"Said dealer's permits may be issued to the proprietor of any drug store, grocery, store or confectionery, or to the proprietor of any store in good repute, in the judgment of the commission, which deals in such other merchandise that the sale of alcoholic malt beverages is not incompatible therewith, or likely to contravene, in the judgment of the commission, the policies and purposes of this act. No dealer's permit, however, shall be issued to any person disqualified under the 'special disqualifications,' enumerated above, excepting however, the eleventh specification in said 'special disqualifications': Provided, however, That it shall not be any disqualification that an applicant for a beer dealer's permit is a corporation not organized under the laws of this state if such corporation is duly admitted to do business in the state of Indiana, and the business to which said last permit applies is within the corporate powers and purposes of said corporation, and if said corporation is otherwise qualified hereunder. No beer dealer's permit shall be issued to any applicant who is not within one of the classes qualified to hold the same, mentioned in this paragraph."

2. "BULLETIN #149—SUBJECT: SALE OF COLD BEER BY PACKAGE LIQUOR STORE DEALERS.

"Pursuant to a petition presented to the Indiana Alcoholic Beverage Commission relative to the sale of cold beer by package liquor store dealers in the State of Indiana, the Indiana Alcoholic Beverage Commission has fully considered all facts, circumstances, and statutory provisions with respect to the authority of package liquor store dealers to sell cold beer. "On and after the 1st day of August, 1963, it will be the policy of the Indiana Alcoholic Beverage Commission that package liquor store dealers will be authorized to sell cold beer for consumption only off said package store premises provided that such package liquor store dealer is located in a metropolitan area which, in the discretion of the Commission, is such as to afford full and adequate opportunity to police the sale of such cold beer and thereby protect the health, safety, and welfare of the people of the state of Indiana.

"The above and foregoing authorization is applicable only to those persons or firms holding a valid package liquor store dealers permit issued by the Indiana Alcoholic Beverage Commission."

Plaintiff's first paragraph of complaint, omitting formal parts thereof, signatures and exhibits thereto reads as follows:

"1. That he is engaged in the restaurant business and coincidental thereto has spent large sums of money on fixtures and equipment which he owns, for his place of business in the City of Seymour, State of Indiana.

"2. That he is also a holder of a beer retailer's, wine retailer's and liquor retailer's permit (3-way permit) to sell alcoholic beverages and, not including said permit, has installed and owns certain fixtures and appliances peculiar to the retailing of alcoholic beverages on his premises in said City.

"3. At the 1941 session of the General Assembly of the State of Indiana, said General Assembly duly passed an Amendment to the Alcoholic Beverage Act; that Section 11 of Alcoholic Beverage Act of 1935 was thereby amended, under Section 4, Chapter 237 of the said Acts of 1941, to provide that in addition to all provisions of law relating to the holder of a beer dealer's permit, it should be unlawful for such permit holder to offer or display for sale, or sell, barter, exchange or give away any bottle, can, container or package of alcoholic malt beverages which was iced or cooled by such permit holder before or at the time of such sale, exchange or gift.

"4. That thereafter, Chapter 56 of the Acts of 1953, Section One, amended the said Alcoholic Beverage Act allowing package liquor stores to sell alcoholic malt beverages under certain conditions which said Chapter 56 declared that in addition to the commodities which a package liquor store may sell under existing law, they shall be permitted to sell the following:

" 'C. Alcoholic malt beverages upon *application and receipt of a beer dealer's permit,* as prescribed by law, including the payment of the sum of two hundred dollars ($200.) in cash, if such dealer's application applies to premises situated within a city of the first or second class, or one hundred fifty ($150) if such application applies to prem-

ises situated within an incorporated or unincorporated town or city having a population of less than thirty-five thousand (35,000) according to the last preceding decennial census of the United States, and such alcoholic malt beverages shall be, in bottles only, or in such containers only as specified by the alcoholic beverage commission, and no sale thereof shall be made by the drink, or for consumption upon the premises described in the application for such permit; likewise, no delivery of said alcoholic malt beverages by such dealer, or on his behalf shall be made on the street or at the curb, but such dealer may make delivery of alcoholic malt beverages on such licensed premises or to the home of any customer in bottles or in such containers as are permissible under the rules and regulations of the alcoholic beverage commission in a quantity not to exceed forty-eight (48) pints at any one (1) time.'

"5. That on or about July 26, 1963, the defendants herein, acting as the Indiana Alcoholic Beverage Commission, issued Bulletin #149 which stated that effective August 1, 1963, certain package liquor store dealers would be authorized to sell cold beer for consumption off the premises of such package liquor stores, a copy of which Bulletin is attached hereto, made a part hereof, and marked Exhibit 1.

"6. That an actual controversy exists between the plaintiff and defendants for the reason that the plaintiff is subject to the rules and regulations of the defendants, as the Indiana Alcoholic Beverage Commission, under the 1935 Alcoholic Beverage Act of Indiana, as amended, and that his said restaurant business, together with the furniture, fixtures and appliances of his tavern business and his property rights therein, exclusive of his said alcoholic beverage permit and the use of such alcoholic beverages, will be damaged by virtue of such sale of iced and cooled beer by package liquor store beer dealers who are competing with this plaintiff under the rules and regulations as enunciated in the 1935 Alcoholic Beverage Act as amended, and that as a result of such controversy,

the rights, status and relationship of the parties hereto are affected.

"WHEREFORE, the plaintiff prays that the Court declare that the prohibition against the sale of iced or cooled malt beverages contained in Section 4, Chapter 237 of the Acts of 1941 (Section 12-510) is of present force and effect with regard to beer dealer's permits."

Plaintiff's second paragraph of complaint, omitting formal parts thereof, signatures and exhibits thereto reads as follows:

"1. That he is engaged in the restaurant business and coincidental thereto has spent large sums of money on fixtures and equipment which he owns, for his place of business in the City of Seymour, State of Indiana.

"2. That he is also a holder of a beer retailer's wine retailer's and liquor retailer's permit (3-way permit) to sell alcoholic beverages and, not including said permit, has installed and owns certain fixtures and appliances peculiar to the retailing of alcoholic beverages on his premises in said City.

"3. At the 1941 session of the General Assembly of the State of Indiana, said General Assembly duly passed an Amendment to the Alcoholic Beverage Act; That Section 11 of Alcoholic Beverage Act of 1935 was thereby amended, under Section 4, Chapter 237 of the said Acts of 1941, to provide that in addition to all provisions of law relating to the holder of a beer dealer's permit, it should be unlawful for such permit holder to offer or display for sale, or sell, barter, exchange or give away any bottle, can, container or package of alcoholic malt beverages which was iced or cooled by such permit holder before or at the time of such sale, exchange or gift.

"4. That thereafter, Chapter 56 of the Acts of 1953, Section One, amended the said Alcoholic Beverage Act allowing package liquor stores to sell alcoholic malt beverages under certain conditions which said Chapter 56 declared that in addition

to the commodities which a package liquor store may sell under existing law, they shall be permitted to sell the following:

" 'C. *Alcoholic malt beverages upon application and receipts of beer dealer's permit,* as prescribed by law, including the payment of the sum of two hundred dollars ($200) in cash, if such dealer's application applies to premises situated within a city of the first or second class, or one hundred fifty ($150) if such application applies to premises situated within an incorporated or unincorporated town or city having a population of less than thirty-five thousand (35,000) according to the last preceding decennial census of the United States, and such alcoholic malt beverages shall be, in bottles only, or in such containers only as specified by the alcoholic beverage commission, and no sale thereof shall be made by the drink, or for consumption upon the premises described in the application for such permit; likewise, no delivery of said alcoholic malt beverages by such dealer, or on his behalf shall be made on the street or at the curb, but such dealer may make delivery of alcoholic malt beverages on such licensed premises or to the home of any customer in bottles or in such containers as are permissible under the rules and regulations of the alcoholic beverage commission in a quantity not to exceed forty-eight (48) pints at any one (1) time.'

"5. That on or about July 26, 1963, the defendants herein, acting as the Indiana Alcoholic Beverage Commission, issued Bulletin #149 which states that effective August 1, 1963, certain package liquor store dealers would be authorized to sell cold beer for consumption off the premises of such package liquor stores, a copy of which Bulletin is attached hereto, made a part hereof, and marked Exhibit 1.

"6. That by virtue of said Bulletin and order the said defendants, as the Indiana Alcoholic Beverage Commission, will, unless restrained and enjoined, put said order and Bulletin into effect on August 1, 1963, and would produce great and irreparable injury to this plaintiff and to his said restaurant business and to his said property rights

in and to his fixtures and appliances peculiar to the retailing of alcoholic beverages on his premises, and exclusive of his said alcoholic beverage permit, for which plaintiff has no adequate remedy at law.

"7. That said order and Bulletin #149 is an order of the defendants, and each of them, as the Indiana Alcoholic Beverage Commission, a segment of the Executive Department of the Government of the State of Indiana, and that the defendants, and each of them, by issuance of said order and Bulletin, exercised the function of the Legislative Department of the Government of the State of Indiana for the reason that the Indiana Legislature in 1941 amended Section 11 of the Alcoholic Beverage Act of 1935, as found in Burns' Statutes, 1956 Replacement, Section 12-510, and reads as follows:

" '12-510 *Beer Dealer's permits—Class "A" Alcoholic malt beverage permits*—Beer dealer's permits for the sale of alcoholic malt beverages may be issued as hereinafter provided. Any person desiring to sell alcoholic malt beverages on the premises described in the dealer's permit, which such alcoholic malt beverages, however, shall not be used or consumed or suffered or permitted to be used or consumed upon the premises where the same are sold under such dealer's permit, shall make verified, written application to the commission for a dealer's permit, on a form duly prescribed and furnished, and the commission may, in its discretion, issue such dealer's permit, subject to the restrictions of this act, after the proceedings herein prescribed therefor shall have been concluded. *In addition to all provisions of law relating to the holder of a beer dealer's permit, it shall be unlawful for such permit holder to offer or display for sale, or sell, barter, exchange or give away any bottle, can, container, or package of alcoholic malt beverages which was iced or cooled by such permit holder before or at the time of such sale, exchange or gift.*'

"8. That said exercise of such Legislative function of the Government of the State of Indiana by the defendants, and each of them, as part of the

Executive Department, is unwarranted and illegal, and has caused this plaintiff great and irreparable injury and damage for which plaintiff has no adequate remedy at law, and will continue to do so, unless defendants, and each of them are restrained and enjoined from exercising said Legislative function.

"9. That an emergency exists for the granting of a temporary injunction against the defendants, and each of them herein, for the reason that said order and Bulletin is effective, as aforesaid, on August 1, 1963, and if allowed to go into effect on said date, will cause this plaintiff great and irreparable damage and injury.

"WHEREFORE, plaintiff prays that an order without notice temporarily restraining and enjoining the defendants and each of them from putting said order and Bulletin into effect until final hearing and determination and that upon final hearing the defendants and each of them be perpetually enjoined from allowing package liquor store dealers from selling or displaying for sale, bartering, exchange or giving away any bottle, can, container or package of alcoholic' malt beverages (beer) which was iced or cooled by such package liquor store dealer before or at the time of such sale, exchange or gift, and for all other proper relief."

Thereafter on July 31, 1963, Frank A. Symmes, Jr. as Judge of the Respondent Court assumed jurisdiction of said cause and without notice issued a temporary restraining order against relators and each of them, reading in pertinent part as follows:

". . . are hereby enjoined and restrained from putting Bulletin and order #149 into effect on August 1, 1963, and from allowing package liquor store dealers from selling or displaying for sale, bartering, exchanging or giving away any bottle, can, container or package of alcoholic malt beverage (beer) which was iced or cooled by such package liquor store dealer before or .at .the time

of such sale, exchange or gift, without notice, until further order of the Court."

That thereafter on August 12, 1963, relators filed their Verified Motion to Dismiss and Vacate Injunction for the reasons that the respondent Court had no jurisdiction of the subject matter of the action; that the plaintiff was precluded from bringing the action by the doctrine *res judicata;* that the action was a collateral attack upon a judgment of the Appellate Court; that the plaintiff as a permittee had no property right therein that would permit him to institute this action.

Thereafter on September 18, 1963, the respondent court overruled relators' Verified Motion to Dismiss and Vacate Injunction; thereafter on September 20, 1963, relators filed their verified motion to reconsider, which motion was overruled by respondent court on September 23, 1963, at which time relators were ruled to plead further on or before October 1, 1963. This original action followed.

The only question properly before the court in this action is the determination as to whether or not the respondent court had jurisdiction to enter the restraining order complained of. *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 186 N. E. 310; 19 I. L. E., Mandate and Prohibition, §161, p. 299; F. W. & H. Ind. Tr. and App. Pract., §2990(d).

It has heretofore been held by numerous decisions of this court that the issuance of a license or permit to sell intoxicating liquor is an exercise of the police power of the state to protect the public morals, and confers no contract or property right. *State ex rel. Pollard et al., etc.* v. *Sup. Ct. Mar. Co.* (1954), 233 Ind. 667, 122 N. E. 2d 612, and cases therein cited.

It is further well and firmly established that the jurisdiction and power of courts of equity to issue restraining orders and injunctions is limited to the protection of civil and property rights. *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 186 N. E. 310; *State ex rel. Feeney* v. *Superior Court* (1934), 206 Ind. 78, 188 N. E. 486; *State ex rel.* v. *Marion Circuit Court* (1943), 221 Ind. 572, 574, 49 N. E. 2d 538; *State ex rel.* v. *Montgomery Circuit Court* (1945), 223 Ind. 476, 62 N. E. 2d 149; *State ex rel. A. B. C.* v. *Sup. Ct., Vanderburgh Co.* (1951), 229 Ind. 483, 99 N. E. 2d 247; *State ex rel. Ind. A. B. C.* v. *Sup. Ct. Mar. Co.* (1954), 233 Ind. 563, 122 N. E. 2d 9.

The legislative intent is clearly evident from the wording of the statute, Acts 1947, ch. 148, §3, p. 454, being §12-443, Burns' 1956 Replacement, which reads in pertinent part as follows:

> "(a) No person shall be deemed to have any property right in any beer wholesaler's permit, beer retailer's permit, beer dealer's permit, liquor wholesaler's permit, liquor retailer's permit, liquor dealer's permit, wine wholesaler's permit, wine retailer's permit, or wine dealer's permit, nor shall said permit itself or the enjoyment thereof be considered a property right."

As the relief sought in the lower court was equitable in nature it follows that respondent court had no jurisdiction of the subject matter of plaintiff's action brought therein.

The plaintiff below is in the peculiar position of asserting that a controversy exists between the plaintiff and the relators by virtue of his permit, ownership of his business, fixtures, appliances and "his property rights therein, exclusive of his al-

coholic beverage permit. . . ." It is quite apparent that were it not for the "permit" plaintiff below would be totally unconcerned with any of the actions of the relators because he would in no wise be subject to any regulation promulgated by relators; it is likewise clearly apparent that no change, alteration, expansion or diminution of plaintiff's "permit" has been made by the ruling he is attacking. He can and does have no interest in the ruling unless his "permit" would thereby be revoked or suspended, plaintiff's permit not being in any wise involved in the ruling he complains of, plaintiff has no justiciable issue to present, no interest in the matter, and his actions in instituting the action below amounted only to harassment of the commission and was without merit.

In view of the decision we have reached it is not necessary to consider other questions raised by relators.

Respondent court is mandated and ordered to dissolve the restraining order heretofore issued by it in cause No. S63-5354 and to take such further proceedings therein as are consistent with his mandate.

Landis, C. J., and Myers, J., concur. Achor, J., dissents with opinion. Arterburn, J., concurs in dissent written by Achor, J.

## DISSENTING OPINION.

ACHOR, J.—Relators have filed a petition for writ of prohibition in which they ask that a writ be issued prohibiting the respondents from further assuming or exercising jurisdiction in Cause No. S63-5354 pending in the respondent court. That action was filed in two paragraphs by one Frank King against the relators herein.

In the first paragraph plaintiff King asked for a declaratory judgment seeking a declaration that package liquor store dealers, authorized in Acts 1953, ch. 56, §1, p. 179, being §12-533, Burns' 1956 Repl., to sell beer, be prohibited from selling *iced* or *cooled* beer by reason of the express prohibition of such sales as provided in the Acts of 1941, ch. 237, §4, p. 952, being §12-510, Burns' 1956 Repl.

In the second paragraph of complaint, the plaintiff asked that a restraining order and injunction be issued, restraining and enjoining the defendants [relators herein] from putting into effect their "order and Bulletin #149" by which the commission purportedly would authorize certain package store beer permittees to sell *iced* and *cooled* malt beverages (beer), notwithstanding the express statutory prohibition against such sales as provided in said §12-510, *supra*. Section 12-510, *supra*, provides:

" . . . In addition to all provisions of law relating to the holder of a beer dealer's permit, *it shall be unlawful for such permit holder to offer or display for sale, or sell, barter, exchange or give away any bottle, can, container or package of alcoholic malt beverages which was iced or cooled by such permit holder before or at the time of such sale, exchange or gift.*" [My italics.]

The trial court issued a temporary restraining order upon the second paragraph of complaint.

As we understand it, the majority opinion is made to rest upon the conclusion that, by reason of the express provisions of §§12-443 and 12-445, Burns' 1956 Repl., the plaintiff in said action, who is a tavern permittee, had no right to judicially challenge the proposed action of the commission and, therefore, that the

respondent court had no jurisdiction to review the regulations promulgated by the commission.

Any decision of the case must rest first on an understanding of the statute. The pertinent parts of the controlling statutes, *supra,* are as follows:

"(a) No person shall be deemed to have any property right in any . . . beer dealer's permit, . . . *nor shall said permit itself or the enjoyment thereof be considered a property right.*

(b) All . . . malt beverage retailer's permits and malt beverage dealer's permits shall be issued, suspended or revoked in the absolute discretion and judgment of the commission. No court shall have jurisdiction of any action, either at law or in equity, to compel the issuance of any such permit, or to revoke, annul, suspend or enjoin any action, ruling, finding or order of the commission suspending or revoking any such permit, and *the consent of the sovereign state of Indiana is hereby expressly withdrawn and denied in any such action, either at law or in equity.*" [My italics.]

"Except as hereinafter in this section expressly set forth and provided no person shall bring any action either at law or in equity against the state of Indiana, the alcoholic beverage division, the alcoholic beverage commission of Indiana, the excise administrator thereof, or the Indiana alcoholic beverage commission, . . . in connection with the administration or enforcement of any provision of law concerning the regulation or taxation of alcoholic liquids, or their sale, use or consumption, and *the consent of the sovereign state is hereby expressly withdrawn and denied in any such action either at law or in equity,* and *no court shall entertain jurisdiction in any such action.*" §12-445, *supra.* [My italics.]

In the light of the above quoted statute, the majority opinion concludes that the trial court was without jurisdiction to entertain the primary cause of action and that the plaintiff had no right to bring the action,

notwithstanding the fact that the plaintiff asserted a right to bring his action as the owner and operator of a restaurant and tavern to whom a beverage permit had been issued, but "exclusive of his alcoholic beverage permit," and further, notwithstanding the fact that the proposed action of the commission was in violation of the express provisions of §12-510, *supra,* which prohibits the sale of iced and cooled malt beverages by a package permittee. The majority opinion is made to rest upon the fact that the *legislative intent* is clearly evidenced from the wording of §§12-443 and 12-445, *supra,* which purports to deny to the plaintiff any right to institute such an action, denies jurisdiction of the courts to review such actions, and expressly withholds the consent of the sovereign to be sued in such actions.

However, the question which this court must decide is not whether the legislature *intended* to vest the commission with "absolute discretion and judgment," in the issuance, suspension, and revocation of alcoholic permits, and in the adoption of regulations pertaining thereto, including regulations which are in violation of the express provisions of the act creating it. The questions which we must consider are (1) whether a statute purporting to invest such authority in the commission is valid; (2) whether the legislature had authority to divest the courts of all jurisdiction as to the actions of the commission and, if not, (3) whether the legislature could divest a tavern permittee of all right to maintain an action to confine the commission to its lawful authority in the issuance of other permits.

With regard to the first issue, it would seem that the law is so well settled as not to require prolonged discussion. A statute which, in effect, reposes an absolute, unregulated and undefined discretion in an adminis-

trative body, is unconstitutional in that it purports to authorize an unlawful delegation of legislative power.[1] *City of Elkhart* v. *Murray* (1905), 165 Ind. 304, 75 N. E. 593; *The City of Richmond* v. *Dudley* (1891), 129 Ind. 112, 28 N. E. 312; 42 Am. Jur. *Public Administrative Law* §45 (1942), 58 A. L. R. 2d 1099.

In the recent case of *Cassidy* v. *Indiana State Bd. of Reg. & Exam. in Optom.* (1963), 244 Ind. 137, 191 N. E. 2d 492, 498, this court stated:

> " . . . In order that this conclusion by the board could be said to support the further conclusion that appellant was guilty of 'unprofessional conduct,' it would seem that the board has been required to resort to §63-1018a, which, in remarkable language, states that, in addition to the enumerated acts defined as 'unprofessional conduct,' 'any other acts that said board may find to be unprofessional conduct, shall be deemed by said board as unprofessional conduct.' *This complete abrogation of legislative authority, if relied upon by the board, would be unconstitutional. Ennis* v. *State Highway Commission* (1952), 231 Ind. 311, 108 N. E. 2d 687; *State ex rel. Standard Oil Co.* v. *Review Bd.* (1951), 230 Ind. 1, 101 N. E. 2d 60." [My emphasis.]

---

1. An administrative board has the undoubted right to adopt rules and regulations designed to enable it to perform its duties and to effectuate the purposes of the law under which it operates, when such authority is delegated to it by legislative enactment, but it may not make rules and regulations inconsistent with the statute which it is administering. *Gross Income Tax Div.* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N. E. 2d 415.

The statutory authority given the State Board of Tax Commissioners to make rules and regulations to carry out the purposes for which it was constituted gives such board no authority to enact a law or add to or detract from the law as enacted, nor may it by rule extend its powers beyond those conferred upon it by law. *McCreery* v. *Ijams* (1945), 115 Ind. App. 631, 59 N. E. 2d 133.

The Review Board is an administrative agency whose powers are conferred by statute and limited to such powers so conferred and any regulations made by it in conflict with organic law and statutes is wholly invalid. *Hill* v. *Review Board, etc., et al.* (1953), 124 Ind. App. 83, 112 N. E. 2d 218.

Furthermore, notwithstanding the language of the act which purports to remove the action of the Alcoholic Beverage Commission from judicial review, the action of the commission is inherently subject to judicial review insofar as its actions are contrary to the express provisions of the act creating it and defining its authority. The courts may not be deprived of this fundamental judicial function. An administrative agency of the state can grant special privileges and immunities under the police power of the state, whether for the protection of morals, health or safety, with absolute impunity from judicial review, only in a police state.

As stated by this court in *Pub. Ser. Comm. et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 83, 131 N. E. 2d 308:

> "It is established law in this state that there is an inherent right to appeal to the courts for relief against the violations of personal or property rights as a result of administrative action. The legislature may not absolutely deprive one of such relief or judicial review...."

Also, as stated by this court in *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 105, 26 N. E. 2d 399:

> "Strictly speaking, there is no such thing as an appeal from an administrative agency. It is correct to say that the orders of an administrative body are subject to judicial review; and that they must be so to meet the requirements of due process. *Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of its powers;* ..." [My emphasis.]

Finally we consider the issue as to whether the plaintiff in the primary cause of action, a restaurant and

tavern owner and operator who has been issued a license therefor, is denied the right to maintain this action for a restraining order and injunction merely because he has no vested property right in the use and enjoyment of his beverage permit.

The cases of *Indiana Alcoholic Beverage Comm.* v. *Deets* (1962), 133 Ind. App. 444, 179 N. E. 2d 217; *State ex rel. Pollard et al.* v. *Sup. Ct. Mar. Co.* (1954), 233 Ind. 667, 122 N. E. 2d 612, and *State ex rel. A. B. C.* v. *Sup. Ct., Vanderburgh Co.* (1951), 229 Ind. 483, 99 N. E. 2d 247, are cited and relied upon as authority in support of relator's contention that the plaintiff in the court below had no right to maintain the action therein and therefore the respondent court was without jurisdiction to entertain such action. In my opinion the Deets case, *supra,* contains no precedent which is controlling of the case at bar. The fact that this court denied transfer in that case is not significant to the decision in this case. As stated by this court on numerous occasions, the mere fact that transfer from the Appellate Court is denied in a particular case does not necessarily imply that this court approves of more than the result reached in that case, and if transfer should be denied because of the defect in either the petition for rehearing in the Appellate Court or in the petition to transfer, the denial may be of no significance except as it serves to terminate the particular action. Flanagan, Wiltrout & Hamilton §2873, p. 409.[2] How-

2. "Thus, it was pointed out that the denial of transfer cannot be regarded as an approval of all that was said *arguendo* or by way of dicta. *Harter* v. *Board of County Com'rs.* (1917), 186 Ind. 301, 116 N. E. 304; *Bartenders, etc., Union* v. *Clark Restaurants, Inc.* (1952), 230 Ind. 372, 103 N. E. 2d 686; *Fardy* v. *Mayerstein* (1943), 221 Ind. 339, 47 N. E. 2d 315, *rehearing denied* 221 Ind. 339, 47 N. E. 2d 966. In the latter case, the court said, 'Denial of a petition to transfer does not indicate our approval of all language of the opinion under consideration. Dicta must be read in relation to the decision. It would be an

ever, the *Deets* case, *supra,* and the cases therein relied upon are clearly distinguishable from the case now in the trial court.

In the *Deets* case the appellee brought his action solely as a package liquor dealer permittee, whereas in this case the plaintiff brought his action as the owner and operator of a restaurant and tavern which he alleged would be irreparably damaged by relators' proposed action. In the *Deets* case, *supra,* plaintiff brought his action (as a permittee) solely under the Declaratory Judgments Act [Acts 1927, ch. 81, §1, p. 208, being §3-1101, et seq., Burns' 1946 Repl.], asking that the court determine that the Alcoholic Beverage Commission was entitled to enlarge the authority of his package malt beverage permit so as to entitle him to sell iced or cooled malt beverages for consumption off the premises. The Appellate Court merely held that the action did not disclose "a justiciable controversy or question, which is clearly defined and affects the *legal* rights, the *legal* statuses, or the *legal* relationships of the parties having adverse legal interests. *Bryarly et al.* v. *State of Indiana et al.* (1953), 232 Ind. 47, 53, 111 N. E. 2d 277. . . . " And the court further stated that the facts therein did not disclose "a substantial

---

unnecessary duplication of effort for us to take over every case containing loose or even erroneous statements which, when read in the light of the facts with which the Appellate Court was dealing, are not likely to mislead courts and lawyers in the future disposition of cases.'

"The main difficulty with accepting a denial of transfer as an approval of the Appellate Court's opinion is that while there may be one or more errors in the opinion, the petition to transfer may seek a transfer on some other ground which has no merit. Thus, in a recent case, the Supreme Court said, 'When a transfer is denied, it does not necessarily follow that the result, or the reasoning by which the result is reached by the Appellate Court, is thereby approved by this court, since the petition to transfer may not present such matters for our determination.' *Citizens Independent Tel. Co.* v. *Davis* (1951), 229 Ind. 217, 97 N. E. 2d 490." *Flanagan, Wiltrout & Hamilton Indiana Trial and Appellate Practice,* §2873, p. 409.

present interest in the relief sought in the initiator of the proceedings . . . of a substantial nature which will [would] warrant particular relief by way of a judgment of conclusive character [pp. 449-450]," all of which facts were considered necessary to maintain an action under §3-1101, *supra,* of the Declaratory Judgments Act. In view of the express provisions of the statute,[3] an opinion as to the correctness of that decision is here reserved. It is to be noted that the remainder of the opinion in the Deets case [133 Ind. App. 444], *supra,* which dealt with the right of a beverage permittee to maintain an action for a restraining order or injunctive relief, which is the nature of the action before us, was mere dicta, since no such relief was sought in that case.

The case of *State ex rel. Pollard* v. *Superior Ct. Mar. Co.* (1954), 233 Ind. 667, 122 N. E. 2d 612, *supra,* was a case in which the administrative remedy of appeal was granted by statute, while in the case before us the statute denies such an appeal. It is further to be noted that after a great deal of very broad and rather loose language in that case, the writ of prohibition, however, was denied.

The case of *State ex rel. A. B. C.* v. *Sup. Ct., Vanderburgh Co., supra* (1951), 229 Ind. 483, 486, 99 N. E. 2d 247, cited and relied upon as authority for the proposition that a restraining order or an injunction will be granted only when a civil or property right is involved and there is no adequate remedy at law. That case also is authority for the fact that "a permit to sell alcoholic beverages is not a *vested* property right." [Citing authorities.] [My italics.]

---

3. "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations *whether or not further relief is or could be claimed.* . . ." §3-1101, Burns' 1946 Repl. [My emphasis.]

The mere fact that the holder of an alcoholic beverage permit does not have a *vested* property right therein which he can convey or maintain as a matter of right, as against a contrary determination by the commission, does not mean that he has no property rights which are related to the use or enjoyment of such permit while the same is in effect. Upon this issue, it has been held:

"While a permit or license as such may not be property, the use and enjoyment of it may give to its possessor something that is valuable and which has all the qualities of property. *State* v. *Corron*, 73 N. H. 434, 62 A. 1044, 6 Ann. Cas. 486. While it is true that the law under which the plaintiff's license was issued provides (section 2), 'that no person shall be deemed to have a property right in any permit issued hereunder, nor shall said permit itself or the enjoinment (sic) thereof be considered a property right' . . . On the other hand *the use of the permit, once granted, has the elements of property irrespective of what the Legislature may declare* about the permit itself, and except for the omnipresent and unlimited power of the state to revoke or modify the terms of the permit in the interest of the public welfare, the use of such permit, if not the permit itself, is property within the meaning of the due process clause of the Federal Constitution." *Midwest Beverage Co.* v. *Gates* (1945), 61 F. Supp. 688, 691.

In the present case, the plaintiff asserted that he brought his action as the owner of a restaurant and tavern business, for which he had procured the necessary fixtures and equipment and for which he had been issued a permit. These facts, if true, vested him with property rights in the ownership and operation of his business apart from any vested property rights in his permit. He further alleged that, unless the Indiana Alcoholic Beverage Commission was restrained and enjoined from putting the proposed Bulletin 149 into ef-

fect, he would suffer great and irreparable injury to his restaurant and tavern business, and to his property rights in and to his fixtures and appliances related thereto.

It is not necessary to a decision in this case that we determine whether or not the facts above alleged are sufficient for the plaintiff to sustain an action for a declaratory judgment under the first paragraph of complaint. I consider that the allegations of his second paragraph of complaint are sufficient to raise an issue as to whether or not he had such property rights in his business and equipment, and his beverage permit related thereto, as to entitle him to protect the same by an action in equity against the unauthorized issuance of beverage permits by the Alcoholic Beverage Commission, which unauthorized action would result in irreparable damage to him.

As previously stated, a writ of prohibition will not issue against a trial court unless such court lacks jurisdiction. In this case the trial court generally has jurisdiction in equity to issue an injunction. The interpretation of the statutes involved is a judicial function, properly within the jurisdiction of the trial court. The legislative branch of the government may not, by statute, take away the jurisdiction of the judicial branch of the government to determine the constitutionality or the interpretative meaning of a statute. Neither may the legislature deprive a litigant of the right to have a determination of his rights and privileges. If a trial court errs, the error may be corrected by appeal—not by a writ of prohibition. This court has said many times, a writ of prohibition may not be used, as in this case, to test the complaint, as by a demurrer, nor as a shortcut for an appeal. *State ex rel. Durham* v. *Marion Circuit Court* (1959), 240 Ind. 132, 162 N. E. 2d 505;

*State ex rel. Local Union No. 414* v. *Allen C. C.* (1960), 240 Ind. 518, 164 N. E. 2d 648. Jurisdiction includes the power to decide erroneously as well as correctly and, assuming that a court may decide erroneously a question before it, it does not automatically lose jurisdiction. *State, etc.* v. *Marion Cir. Ct., etc.* (1959), 239 Ind. 327, 157 N. E. 2d 481; *State ex rel. Durham* v. *Marion Circuit Court, supra.*

The writ of prohibition should not be issued by this court which would interfere with the proper functions of the trial court.

NOTE.—Reported in 197 N. E. 2d 634.